UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LARRY MAX LAWHEAD, JR.,

              Petitioner,

v.

BRYAN MORRISON,

              Respondent.

_____/

Case No. 1:21-cv-964

Hon. Hala Y. Jarbou

**<u>OPINION</u>**

      This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Larry Max Lawhead, Jr. is incarcerated with the Michigan Department of Corrections at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. On February 15, 2017, following a two-day jury trial in the Calhoun County Circuit Court, Petitioner was convicted of one count of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b, and one count of second-degree criminal sexual conduct (CSC-II), in violation of Mich. Comp. Laws § 750.520c. On April 3, 2017, the court sentenced Petitioner to concurrent prison terms of 25 to 50 years for CSC-I and 3 years, 2 months, to 15 years for CSC-II.

      On November 15, 2021, Petitioner, who is represented by counsel in this action, filed his habeas corpus petition raising five grounds for relief, as follows:

I.      [Petitioner] was deprived of his Sixth Amendment rights to present a defense and to confrontation where the trial court precluded him from presenting evidence of his accuser alleging sexual assault involving other actors without first allowing [Petitioner] the opportunity to present proofs at an in-camera hearing.

II.     [Petitioner] was denied his constitutional right to a fair trial by the admission of similar acts testimony from a pending case.

III.    [Petitioner] was denied his Sixth Amendment right to the effective assistance of trial counsel where counsel failed to interview several key witnesses and failed to challenge the interview protocol utilized in this case.

IV.    [Petitioner] was denied his Sixth Amendment right to the effective assistance of counsel on his direct appeal.

V.    [Petitioner] has requested an evidentiary hearing on his ineffective assistance of counsel claims in the state courts and his request has been summarily denied. This Court should hold a hearing to prevent a miscarriage of justice.

(Pet., ECF No. 1, PageID.2–3.) Respondent asserts that Petitioner's grounds for relief are meritless. (ECF No. 6.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

## Discussion

## I.    Factual Allegations

The Michigan Court of Appeals described the facts and procedural history underlying Petitioner's convictions and sentences as follows:

> Defendant was a friend of the victim's parents and was at their home on numerous occasions for parties and social events throughout the years. In the summer of 2011 when the victim was 10 years old, during one of the parties that defendant attended at the home, defendant went inside the house and sat beside the victim on the couch and put his arm around her, placed his hand on her leg, and rubbed her knee area. He consoled her about her parents, who were having marital problems, and told her he was there for her. Defendant held the victim tightly close to him and rubbed her inner thigh, then moved his hand up almost to her waist. After a few minutes, he went back outside with the adults.
>
> A few days later, during another party at the victim's home, defendant went inside and sat beside her on the couch where she watched television. Defendant put his arm around her, rubbed her inner thigh, and slid his ha[n]d up and inside her shorts under her underwear and digitally penetrated her vagina. The victim asked defendant to stop, but defendant told her it would be okay. She tried to pull away from defendant but he pulled her closer. She eventually pulled away and ran to her bedroom where she locked the door. For the rest of the summer, if her parents had people over, she stayed in her bedroom with the door locked for fear that she would be sexually assaulted again. She did not reveal the incidents involving defendant

2

until a few years later when her father and stepmother confronted her about behavioral problems. She told them what defendant did to her, and they called Child Protective Services, who in turn referred the matter to the Calhoun County Sheriff's Office.

Before trial, the prosecution filed a notice that it intended to produce at trial other-acts evidence under MRE 404(b) and MCL 768.27a by eliciting testimony from defendant's daughter regarding sexual assaults defendant committed against her. Defendant objected to the admission of the evidence but the trial court ruled that the evidence would be allowed. On the first day of trial, the prosecution also moved to preclude defendant from bringing up or eliciting any testimony from witnesses protected under Michigan's rape-shield statute, MCL 750.520j. The prosecution specifically sought the preclusion of testimony regarding the fact that the victim made accusations against another individual with whom her mother had a relationship. The trial court ruled that the specific evidence would be excluded.

*People v. Lawhead*, No. 338063, 2018 WL 2419052, at *1 (Mich. Ct. App. May 29, 2018).

Petitioner's trial began on February 14, 2017. Over the course of two days, the jury heard testimony from numerous witnesses, including a Calhoun County sheriff's deputy, the victim, a psychologist, the victim's father and stepmother, and Petitioner's daughter. (Trial Tr. I & II, ECF Nos. 7-4, 7-5.) After less than an hour of deliberation, the jury reached a guilty verdict on February 15, 2017. (Trial Tr. II, ECF No. 7-5, PageID.559.) Petitioner appeared before the trial court for sentencing on April 3, 2017. (ECF No. 7-6.)

Petitioner, with the assistance of counsel, directly appealed his convictions and sentences, raising the first two grounds for relief set forth above. (ECF No. 7-9, PageID.734.) The court of appeals rejected Petitioner's arguments and affirmed his convictions and sentences. *Lawhead*, 2018 WL 2419052, at *1. Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court, which was denied on October 30, 2018. (ECF No. 7-11.)

Petitioner subsequently filed a *pro se* motion for relief from judgment pursuant to Michigan Court Rule 6.500 *et seq.*, raising the third and fourth grounds for relief set forth above. (ECF No. 7-7, PageID.578–632.) The trial court denied his motion on March 21, 2019. (ECF No. 7-8.) Petitioner applied for leave to appeal that decision in the Michigan Court of Appeals and the

Michigan Supreme Court. Those courts denied leave by orders entered on August 29, 2019, and

December 22, 2020, respectively. (ECF No. 7-10, PageID.757; ECF No. 7-11, PageID.1014.) This

§ 2254 petition followed.

## II.    Request for an Evidentiary Hearing

As his fifth ground for relief, Petitioner contends that this Court should hold an evidentiary

hearing regarding his ineffective assistance of counsel claims to prevent a "miscarriage of justice."

(ECF No. 1, PageID.3.) Generally, habeas corpus actions are determined on the basis of the record

made in the state court. *See* Rule 8, Rules Governing § 2254 Cases. The presentation of new

evidence at an evidentiary hearing in the district court is not mandatory unless one of the

circumstances listed in 28 U.S.C. § 2254(e)(2) is present. *See Sanders v. Freeman*, 221 F.3d 846,

852 (6th Cir. 2000). The Sixth Circuit Court of Appeals recently reviewed the requirements of the

statute:

> As the Supreme Court recently recognized, [the Antiterrorism and Effective Death
> Penalty Act] "restricts the ability of a federal habeas court to develop and consider
> new evidence." *Shoop* [*v. Twyford*], 142 S. Ct. [2037,] 2043 [(2022)]. Specifically,
> the statute allows the development of new evidence in "two quite limited
> situations": (1) when the claim relies on a "new" and "previously unavailable" "rule
> of constitutional law" made retroactive by the Supreme Court, or (2) when the claim
> relies on a "factual predicate that could not have been previously discovered
> through the exercise of due diligence." *Id.* at 2044 (quoting 28 U.S.C. § 2254(e)(2)).
> And even if a prisoner can satisfy either of those exceptions, to obtain an
> evidentiary hearing, he still must show by "clear and convincing evidence" that "no
> reasonable factfinder" would have convicted him of the crime charged. *Shinn* [*v.
> Ramirez*], 142 S. Ct. [1718,] 1734 [(2022)] (quoting 28 U.S.C. § 2245(e)(2)(A)(i),
> (ii)). Mammone does not purport to satisfy any of these stringent requirements for
> obtaining discovery or an evidentiary hearing: he does not rely on a new rule of
> constitutional law, he does not contend that the factual predicate for his
> constitutional claims could not have been previously discovered, and he points to
> no clear and convincing evidence that would cast doubt on the jury's verdict.

*Mammone v. Jenkins*, 49 F.4th 1026, 1058–59 (6th Cir. 2022).

Petitioner, like Mammone, does not rely upon any new rule of constitutional law, nor does

his claim rely on a factual predicate that could not have been previously discovered through the

exercise of due diligence. Moreover, even if Petitioner cleared those hurdles, he does not show by any evidence, much less clear and convincing evidence, that no reasonable factfinder would have convicted him. Under these circumstances, there is no basis to hold an evidentiary hearing. Accordingly, Petitioner's request for a hearing, set forth as his fifth ground for relief, will be denied.[1]

## III.  AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the

---

[1] To the extent that Petitioner contends that the trial court erred by not holding an evidentiary hearing regarding Petitioner's claims of ineffective assistance, such a claim is not cognizable on federal habeas review. *See Simpson v. Jones*, 238 F.3d 399, 406–07 (6th Cir. 2000) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Smith v. Phillips*, 455 U.S. 209, 221 (1982)). In addition, "the Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (citing *Kirby v. Dutton*, 794 F.2d 245, 246–47 (6th Cir. 1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002)). "[T]he traditional function of the writ is to secure release from illegal custody," *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973), but a due process claim with respect to post-conviction proceedings, even if resolved in Petitioner's favor, would not impact Petitioner's custody. In reviewing such a claim, the Court "would not be reviewing any matter directly pertaining to" that custody. *Cress*, 484 F.3d at 853 (quoting *Kirby*, 794 F.2d at 247). If this Court were to conclude that the trial court erred in denying Petitioner's request for an evidentiary hearing, Petitioner would not automatically be released from custody or be granted a new trial.

correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching

6

outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d

at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## IV.    Discussion

### A.    Ground I—Confrontation Clause Issue

As his first ground for relief, Petitioner argues that he was deprived of his Sixth Amendment right to present a defense and confront witnesses because the trial court "precluded him from presenting evidence of his accuser alleging sexual assault involving other actors without first allowing [Petitioner] the opportunity to present proofs at an in-camera hearing." (ECF No. 1, PageID.2.)

The court of appeals rejected Petitioner's argument, stating:

> Both the United States and Michigan Constitutions provide the accused the right to confront the witnesses against him. U.S. Const., Am. VI; Const. 1963, art. 1, § 20; *People v. Fackelman*, 489 Mich. 515, 524–525; 802 N.W.2d 552 (2011). However, "[t]he right to confront and cross-examine is not without limits. It does not include a right to cross-examine on irrelevant *issues*. It may bow to accommodate other legitimate interests in the criminal trial process, and other social interests." *People v. Arenda*, 416 Mich. 1, 8; 330 N.W.2d 814 (1982) (citations omitted; emphasis in original).

*Lawhead*, 2018 WL 2419052, at *2. The court proceeded to review how the "other legitimate interests in the criminal trial process" were given effect in the Michigan Rules of Evidence and Michigan's Rape Shield statute. *Id.* at *2–3. The appellate court acknowledged that precluding cross-examination under the rules and statute could potentially compromise a defendant's constitutional rights:

> Occasionally, however, "'such evidence may not only be relevant, but its admission may be required to preserve a defendant's constitutional right to confrontation.'" *Adair*, 452 Mich. at 484, quoting *People v. Hackett*, 421 Mich. 338, 348; 365 N.W.2d 120 (1984).  . . .  The Michigan Supreme Court, however, left the determination of the admissibility of such evidence "to the sound discretion of the trial court." *Id.* at 349. "In exercising its discretion, the trial court should be mindful of the significant legislative purposes underlying the rape-shield statute and should always favor exclusion of evidence of a complainant's sexual conduct where its

8

exclusion would not unconstitutionally abridge the defendant's right to confrontation." *Id.*

*Id.* at *3. The court of appeals explained why Petitioner's case was not one of those occasions:

In this case, before his trial started, defendant indicated his desire to confront the victim regarding allegations she made against a third person about a sexual assault that occurred more recently. The record reflects that defendant contended that the facts had relevancy to his theory of the case but failed to explain how confronting the victim about making allegations against another person on this separate and remote event served any theory of his defense. Defendant merely stated that he wanted to ask the victim whether she had made a sexual assault accusation against an individual who had been involved with her mother. Although defendant had every opportunity to proffer the evidence, seek an *in camera* review by the trial court, and explain fully to the trial court how such evidence might have had bearing on a fact in issue and supported his defense, he failed to do so. Defendant's contention on appeal that he had no opportunity to make an offer of proof and seek an in camera review lacks merit. The trial court gave defendant ample opportunity to explain the basis for confronting the victim and how such confrontation might help his case. Defendant, however, made no effort to establish how allegations of a sexual assault against another individual years after the incidents for which he had been charged had any relevance to his case. Defendant failed to meet his obligation to make an offer of proof as to the proposed evidence and to demonstrate its relevance to the purpose for which he sought its admission.

The evidence also clearly did not fit within the narrow exceptions to the rape-shield statute. The evidence could not establish that the minor victim consented to defendant's sexual conduct, nor could it establish the source of the victim's injury, pregnancy, or disease. Consequently, the evidence was inadmissible under MCL 750.520j. The trial court, therefore, correctly held that the proffered evidence ran afoul of the rape-shield statute because the evidence was neither of prior consensual sexual conduct between the victim and defendant, nor was it offered to establish the source of semen, pregnancy, or disease. MCL 750.520j(1)(a) and (b).

Further, we believe that evidence regarding the victim's allegation of sexual assault years later by a person other than defendant lacked relevance because such evidence was not material to any fact in question in this case. Defendant failed to establish that the victim's allegations against the other person had relevance to any of his defenses. Defendant never contended that the victim falsely accused the other person or that the allegation had any bearing on the victim's credibility. Defendant never argued that the fact of the allegations might establish the victim's bias, an ulterior motive for making a false charge against him, or any other basis for the contention that her allegation against another person had relevance to his case. *Hackett*, 421 Mich. at 348; *Morse*, 231 Mich. App. at 436; *People v. Williams*, 191 Mich. App. 269, 271–272; 477 N.W.2d 877 (1991). The record reflects that defendant's constitutional rights to present a defense and confront the witnesses against him were not violated. *Duenaz*, 306 Mich. App. 90–91. Accordingly, we

conclude that the trial court did not abuse its discretion by denying the admission of the evidence of the victim's allegations of sexual assault by another person.

*Id.* at *4.

As an initial matter, Petitioner faults the trial court for not holding an *in camera* hearing regarding his proofs concerning the victim alleging sexual assault against other individuals. The court of appeals concluded that the trial court did not abuse its discretion, pursuant to state law, by not holding a hearing. That determination is axiomatically correct. As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67–68. The decision of the state courts on a state law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Moreover, Petitioner's Sixth Amendment argument lacks merit. The Confrontation Clause of the Sixth Amendment provides the accused the right "to be confronted with the witnesses against him." U.S. Const. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 403–05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). Accordingly, the Constitution protects a defendant's right to cross-examine his accusers. *Davis v. Alaska*, 415 U.S. 3–8, 316–317 (1974). But the Confrontation Clause does not guarantee cross-examination "in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (citation omitted). States may place reasonable limits on the scope of cross-examination.

Clearly established federal law supports the conclusion that Michigan's Rape Shield law is just such a reasonable limit. *Batey v. Haas*, 573 F. App'x 590 (6th Cir. 2014); *Gagne v. Booker*,

10

680 F.3d 493 (6th Cir. 2012). As the United States Court of Appeals for the Sixth Circuit explained

in *Gagne*:

> The Michigan Court of Appeals accepted that the State has a legitimate interest under its Rape Shield Law in excluding evidence, and considered the probity of the evidence as a measure of Gagne's interest in admitting it. The United States Supreme Court has never held that rape-shield statutes do not represent a legitimate state interest, nor has it ever held that highly probative evidence will necessarily outweigh that interest. Quite to the contrary, the Court held in *Lucas*, 500 U.S. at 152–53, 111 S. Ct. 1743, that the trial court must balance the state's interest against the defendant's interest on a case-by-case basis, and neither interest is superior *per se*. And the Court concluded in *Crane*, 476 U.S. at 690, 106 S. Ct. 2142, that a trial court may even "exclude competent, reliable evidence . . . central to the defendant's claim of innocence," so long as there exists a "valid state justification." The Michigan Court of Appeals properly weighed the competing interests, as Supreme Court precedent requires, and did not misidentify or misapply any clearly established federal law.

*Gagne*, 680 F.3d at 516 (citing *Michigan v. Lucas*, 500 U.S. 145, 152–53 (1991); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).

As set forth above, the court of appeals thoroughly and properly weighed the competing

interests with respect to evidence that the victim had alleged sexual assault involving other actors

and determined that such evidence did not fit within the narrow exceptions to the rape shield law

and was not relevant to Petitioner's defense. The court of appeals' decision was neither contrary

to, nor an unreasonable application of, clearly established federal law as set forth above. Petitioner,

therefore, is not entitled to relief on habeas ground I.

### B. Ground II—Admission of Similar Acts Testimony

As his second ground for relief, Petitioner contends that he was denied his constitutional

right to a fair trial because of the admission of "similar acts testimony from a pending case." (ECF

No. 1, PageID.2.) Specifically, Petitioner takes issue with the testimony provided by his daughter,

"who was the complainant in a different but pending case" against Petitioner. (ECF No. 8,

PageID.1122.) According to Petitioner, his daughter's testimony "was far more prejudicial than

11

probative with its primary purpose to show character or propensity to commit the charged act(s)."

(*Id.*)

The court of appeals rejected Petitioner's argument, stating in relevant part:

Other-acts evidence may be admitted under MRE 404(b) and MCL 768.27a. MRE 404(b)(1) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

The Michigan Supreme Court has held that a trial court's admission of other-acts evidence was not an abuse of discretion if the trial court's decision met the three-part test articulated in *Huddleston v. U.S.*, 485 U.S. 681, 691–692; 108 S. Ct. 1496; 99 L. Ed. 2d 771 (1988) that was adopted *in People v. VanderVliet*, 444 Mich. 52, 74; 508 N.W.2d 114 (1993). *People v. Sabin*, 463 Mich. 43, 55–56; 614 N.W.2d 888 (2000). In *Sabin*, the Michigan Supreme Court stated the test as follows:

First, the prosecutor must offer the other acts evidence under something other than a character to conduct or propensity theory. Second, the evidence must be relevant under MRE 402, as enforced through MRE 104(b), to an issue of fact of consequence at trial. Third, under MRE 403, a determination must be made whether the danger of undue prejudice [substantially] outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decision of this kind under Rule 403. [*Id.* at 55–56 (citation and quotation marks omitted).]

*Sabin* also clarified that MRE 404(b) is a rule of inclusion and not exclusion, but when a trial court admits MRE 404(b) other-acts evidence, "the trial court upon request, may provide a limiting instruction under MRE 105." *Sabin*, 463 Mich. at 56.

*Lawhead,* 2018 WL 2419052 at *5. The court of appeals applied the *Huddleston/VanderVliet* test and concluded the evidence was properly admitted and did not render Petitioner's trial unfair. *Id.* at *8 ("Although the evidence certainly was prejudicial to defendant, we conclude that the highly probative value of the evidence substantially outweighed such prejudice. We are not persuaded that the evidence caused unfair prejudice, confusion of the issues, or misled the jury. The trial

court, therefore, did not abuse its discretion by permitting defendant's daughter's testimony under both MRE 404(b) and MCL 768.27a.").

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle*, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." 502 U.S. at 67–68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. "[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (internal quotation marks omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552. Thus, to the extent that Petitioner asserts that the state courts erred under Michigan law, he fails to state a claim upon which habeas relief may be granted. State courts are the final arbiters of state law, and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860

13

(6th Cir. 2000); *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that, to obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "a Supreme Court case establishing a due process right with regard to the specific kind of evidence at issue").

Here, Petitioner cites the Supreme Court's decision in *Old Chief v. United States*, 519 U.S. 172 (1997), to support his argument that his daughter's testimony was "highly prejudicial" and denied him a fair trial. (ECF No. 8, PageID.1123.) *Old Chief*, however, did not concern due process. Instead, in *Old Chief*, the Supreme Court addressed whether prior acts testimony is permissible under the Federal Rules of Evidence. *See Bugh*, 329 F.3d at 513 (citing *Old Chief*, 519 U.S. at 172). The Supreme Court did not address the issue in terms of constitutional due process. *Id.*; *see also Old Chief*, 519 U.S. at 174–86.

Petitioner's reliance on *Old Chief* is misplaced, and he fails to identify any clearly established Supreme Court precedent that would preclude admission of the testimony at issue, regardless of whether it was covered by Rule 404(b). *See Burger v. Woods*, 515 F. App'x 507, 510 (6th Cir. 2013) (discussing that even if the trial court violated Michigan Rule of Evidence 404(b), such "'garden-variety' character-evidence error does not 'cross the constitutional threshold' of due process"). Petitioner has not met this high standard and, therefore, is not entitled to habeas relief on this ground.

## C.     Grounds III and IV—Ineffective Assistance of Trial and Appellate Counsel

### 1.     Standard of Review

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance

prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The *Strickland* standard that applies to trial counsel also applies to appellate counsel. However, a criminal appellant has no constitutional right to have every non-frivolous issue raised on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing *Harrington*, 562 U.S. at 102)).

Petitioner's ineffective assistance of counsel claims were considered by the trial court when considering Petitioner's motion for relief from judgment. The trial court summarily denied Petitioner's motion for relief from judgment in a seven-sentence order, stating that the motion was "without merit" after review of Petitioner's motion, court file, and record. (ECF No. 7-10.) The court of appeals and supreme court summarily denied Petitioner's applications for leave to appeal. (ECF No. 7-10, PageID.757; ECF No. 7-11, PageID.1014.)

Although the trial court provided no explanation to support its denial of Petitioner's motion for relief from judgment, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Harrington*, 562 U.S. at 98. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* Thus, "2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Id.* at 100. Here, Petitioner fails to argue that the state courts' decisions did not

involve a determination of the merits of his ineffective assistance claims. Section 2254(d), therefore, applies to his petition, and the Court will consider whether the state courts' denial of relief was contrary to, or an unreasonable application, of, *Strickland.*

### 2. Ground III—Ineffective Assistance of Trial Counsel

As his third ground for relief, Petitioner contends that trial counsel rendered ineffective assistance. (ECF No. 1, PageID.3.) In his reply brief, Petitioner specifies that he is asking the Court to consider four specific instances of alleged ineffective assistance. The Court considers each in turn below.

### a. Failure to Interview and Call Witnesses

For his first two instances of alleged ineffective assistance, Petitioner faults trial counsel for failing to investigate and/or call certain witnesses. Specifically, Petitioner alleges that trial counsel should have interviewed or called as a witness Meagan Powell, the Child Protective Service (CPS) employee who conducted the initial interview of the victim. (ECF No. 8, PageID.1125.) Petitioner also faults counsel for "fail[ing] to interview or call CIT interviewer Brenda Lamica or the reporting officer K. Herrington of the Calhoun County Sheriff's Department." (*Id.*, PageID.1126.) Petitioner states that "[c]ounsel had their reports prior to trial and was fully aware that the [victim's] statements seemed to progressively differ with each and every interview and that she was claiming abuse from other individuals as well." (*Id.*)

"Decisions as to whether to call certain witnesses or what evidence to present are presumed to be matters of trial strategy, and the failure to call witnesses or present evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense." *Collins v. Berghuis*, No. 1:08-cv-369, 2011 WL 4346333, at *16 (W.D. Mich. Aug. 22, 2011) (citing *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002)). Here, Petitioner has not presented any affidavits from the proposed

17

witnesses to support his ineffective assistance of counsel claim. The record indicates, however, that in support of his motion for relief from judgment, Petitioner included copies of reports from Deputy Herrington, as well as a copy of a report that was sent from Powell to the Calhoun County Sheriff's Office.

> The report from Powell states in relevant part:
>
> Last night, [the victim] was caught at her father's home, using a phone and confronted as to why she had the phone. [The victim] disclosed that when she was 10 years old, her mother's friend, [Petitioner], would rub her leg and eventually touched her inappropriately. [Petitioner] would put his hands down [the victim's] pants and touch her vagina. **There was no penetration that took place when the inappropriate touching took place**.

(ECF No. 7-7, PageID.649 (emphasis added).) Petitioner suggests that counsel had a copy of this report "well before trial" and should have interviewed Powell or called her as a witness in support of Petitioner's defense. (ECF No. 8, PageID.1125.) Notably, however, during cross-examination of the victim, trial counsel questioned the victim about what she told her father; the victim testified that she told her father that no penetration occurred. (Trial Tr. I, ECF No. 7-4, PageID.202–203.) The report by Powell does not contain any indication that Powell spoke directly to the victim or could testify to anything the victim said. Any testimony by Powell concerning what the victim purportedly said would have constituted inadmissible hearsay. *See Beauchamp v. McKee*, 488 F. App'x 987, 992 (6th Cir. 2012). In any event, given the fact that the victim did testify that she told her father that no penetration occurred, Petitioner cannot demonstrate that counsel's failure to call Powell to testify regarding the same fact prejudiced his defense in any way.

The reports from Deputy Herrington also memorialized Herrington's contact with Meagan Powell. (ECF No. 7-7-PageID.654.) Deputy Herrington was told that the victim had stated Petitioner had touched her "approximately 10 times." (*Id.*) The victim had also raised allegations of sexual abuse by other individuals. (*Id.*) The report also included Deputy Herrington's

18

interpretation of an interview of the victim completed by CIT interviewer Brenda Lamica. (*Id.*, PageID.652.) During that interview, the victim told Lamica that Petitioner "touched her over the summer frequently, approximately 8 to 9 times." (*Id.*) The victim told Lamica that Petitioner "touched her between her legs and this occurred multiple times." (*Id.*) The victim also noted that Petitioner "touched her approximately 4 times over her clothing and 4 times under her clothing during that summer." (*Id.*) The victim "distinctly" remembered one time when Petitioner "slipped his hand under her shorts and her underwear. She stated he then started rubbing her vagina." (*Id.*)

This report, however, does not evidence anything that Lamica may have recalled regarding her interview of the victim. Moreover, nothing in the report indicates that Lamica was willing and able to testify on Petitioner's behalf. If Lamica's recollection of the interview corroborated the victim's testimony that Petitioner touched her several times, counsel may have reasonably chosen not to present such testimony because it would have been damaging to Petitioner's defense.

Moreover, Petitioner overlooks the fact that Deputy Herrington was the first witness to testify for the State at Petitioner's trial. Deputy Herrington testified that the Calhoun County Sheriff's Office had received a referral from CPS "for a child they believe[d] was being sexually assaulted or admitted to possibly being sexually assaulted by [Petitioner]." (Trial Tr. I, ECF No. 7-4, PageID.279.) Deputy Herrington testified that contact was made with the CPS worker who made the referral, and that she was present during the CIT interview of the victim. (*Id.*, PageID.281–282.) Moreover, on cross-examination, counsel elicited the fact that Deputy Herrington never personally interviewed the victim. (*Id.*, PageID.286.) Counsel also elicited the fact that the basis of the investigation was whatever was told to CPS and what was observed during the CIT interview. (*Id.*)

19

In sum, Petitioner has not demonstrated that counsel's failure to call Powell and Lamica as witnesses deprived him of a "substantial defense." *Collins*, 2011 WL 4346333, at *16. Moreover, Petitioner has failed to describe how counsel should have further cross-examined Deputy Herrington regarding her report. *See Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997) ("Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel."). Petitioner has failed to show that the state court's rejection of his ineffective assistance claim premised upon trial counsel's failure to interview and call witnesses was contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief with respect to this claim of ineffective assistance.

### b.        Failure to Challenge and Counter Expert Testimony

Petitioner next faults trial counsel for not "challeng[ing] the State's expert Dr. Randall Haugen's testimony [regarding] delayed reporting of alleged sexual abuse as improper vouching and misleading as Dr. Haugen claimed never to have spoken with the individuals involved." (ECF No. 8, PageID.1126.) Petitioner suggests that, at best, counsel should have sought his own expert to challenge Dr. Haugen's "identifying characteristics of a child's disclosure of sexual abuse." (*Id.*, PageID.1226-1227.) Petitioner also avers that a counter-expert could have "explain[ed] other factors—factors which lead to false memories and further inaccurate statements." (*Id.*, PageID.1227.) Petitioner states further that a counter-expert could have "challenged the investigative interview techniques employed in this case." (*Id.*)

As noted *supra*, "[d]ecisions as to whether to call certain witnesses or what evidence to present are presumed to be matters of trial strategy, and the failure to call witnesses or present evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense." *Collins*, 2011 WL 4346333, at *16 (citing *Chegwidden v. Kapture*, 92 F. App'x at 311; *Hutchison*, 303 F.3d at 749). Moreover, "*Strickland* does not enact Newton's third

law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Harrington*, 562 U.S. at 111. "In many instances cross-examination will be sufficient to expose defects in an expert's presentation." *Id.*

This Court has noted that the "battle of expert testimony regarding delayed disclosure plays out in many CSC-I cases." *Mosher v. Burt*, No. 1:20-cv-33, 2021 WL 2926059, at *12 (W.D. Mich. May 3, 2021) (citing *Howell v. Parish*, No. 1:19-cv-446, 2021 WL 1169846, at *9–10 (W.D. Mich. Mar. 4, 2021)). This battle often involves a conflict between testimony that delayed disclosure evidences fabrication and testimony that delayed disclosure is common and "follows from the difficulty inherent in disclosing sensitive sexual acts." *Howell*, 2021 WL 1169846, at *9. "The relatively recent social media publication of first-hand accounts from thousands of victims revealing pervasive sexual harassment and abuse, typically never reported at the time it occurred . . ., suggests that the common experience of jurors might be enough to help them evaluate the credibility of delayed disclosures without expert assistance." *Mosher*, 2021 WL 2926059, at *12.

Plaintiff first contends that counsel should have challenged Dr. Haugen's testimony as "improper vouching and misleading" because Dr. Haugen "claimed never to have spoken with the individuals involved." (ECF No. 1, PageID.1126.) Counsel's decisions regarding whether and how to cross-examine a witness are matters of trial strategy, which are entitled to "great respect" by this Court. *See Glenn v. Sowders*, No. 85-5754, 1986 WL 18475, at *4 (6th Cir. Dec. 8, 1986); *see also Henderson*, 118 F.3d at 1287. While there may be room for improvement in cross-examination, were that to be "the standard of constitutional effectiveness, few would be the counsel whose performance [pass] muster." *Henderson*, 118 F.3d at 1287 (quoting *Willis v. United States*, 87 F.3d 1004, 1006 (8th Cir. 1996)). On cross-examination, counsel elicited that Dr.

Haugen had not "talked to anybody or interviewed anybody relative to this case." (Trial Tr. I, ECF No. 7-4, PageID.393.) Moreover, counsel had Dr. Haugen admit that "to be specific as to a specific case, you really have to do the interview and—and have an understanding of all the circumstances surrounding things to render an opinion." (*Id.*) Given these inquiries, Petitioner has not demonstrated, and the Court does not discern, that counsel's failure to object to Dr. Haugen's testimony as improper vouching or misleading prejudiced his defense in any way.

Moreover, Petitioner simply has not demonstrated that counsel's failure to present an expert witness to counter Dr. Haugen's testimony deprived him of a "substantial defense." *Collins*, 2011 WL 4346333, at *16. During direct examination, Dr. Haugen testified regarding the "commonalities that are acceptable in the process of sexual abuse," including delayed reporting by minor victims. (Trial Tr. I, ECF No. 7-4, PageID.376–377.) It appears that Petitioner believes counsel should have presented an expert witness to suggest that delayed reporting of sexual abuse indicates fabrication. However, any expert presented by Petitioner's counsel would likely not have stated that only timely reporting of sexual abuse is true or that a delayed report is false.

As noted by the Sixth Circuit, "the Supreme Court has held that '[i]n many instances *cross-examination will be sufficient* to expose defects in an expert's presentation.'" *Jackson v. McQuiggin*, 553 F. App'x 575, 582 (6th Cir. 2014) (quoting *Harrington*, 562 U.S. at 111). Counsel's strategy was to question the accuracy of the victim's memories, especially given the delayed reporting, and to suggest that it would not be unusual for a child "to clarify some events in their mind" after undergoing several interviews with professionals. (ECF No. 7-4, PageID.392.) Given this focus, counsel's decision to not present a counter-expert and, instead, focus on cross-examination was a reasonable trial strategy. *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005); *see also Mosher*, 2021 WL 2926059, at *11–12 (rejecting the petitioner's claim of

ineffective assistance premised upon counsel's failure to call an expert to counter testimony provided by the prosecution's expert regarding delayed disclosure).

The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel's pursuit of it was professionally unreasonable. Petitioner has failed to show that the state court's rejection of his ineffective assistance claim premised upon counsel's failure to adequately challenge Dr. Haugen's testimony and, alternatively, to present a counter-expert is contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief with respect to this claim of ineffective assistance.

### c. Failure to Adequately Object to Petitioner's Daughter's Testimony

Finally, Petitioner contends that trial counsel was ineffective for "fail[ing] as his advocate when the State moved to introduce the testimony of [Petitioner's] daughter." (ECF No. 8, PageID.1127.) According to Petitioner, counsel did object to the admission of the testimony pursuant to Michigan Rule of Evidence 403, but failed to "lay out the three part test articulated in *Huddleston v. U.S.* . . . and adopted by Michigan courts in *People v. VanderVliet*." (*Id.*) Petitioner also faults counsel for failing to cross-examine his daughter. (*Id.*, PageID.1127.)

Prior to trial, counsel objected to the admission of Petitioner's daughter's testimony, asserting that it "would be much more prejudicial than any probative value and for the simple reason that . . . we're talking two different scenarios." (Trial Tr. I, ECF No. 7-4, PageID.160.)[2] Counsel argued that "a jury could easily make a wrongful inference about what happened in this

---

[2] Indeed, it is somewhat disingenuous for Petitioner to suggest that his trial counsel did not address *VanderVliet* because the Notice of Intent relating to the 404(b) evidence, (ECF No. 7-9, PageID.727–729), lays out that test. It is the notice laying out the test that Petitioner's counsel responded to when he objected to admission of the daughter's testimony in his written response and in his oral argument on the first day of trial. (Trial Tr. I, ECF No. 7-4, PageID.158–164.)

case just based on [Petitioner's daughter's] testimony." (*Id.*, PageID.163.) The trial court overruled counsel's objection. Counsel did not cross-examine Petitioner's daughter. (Trial Tr. II, ECF No. 7-5, PageID.500.)

As discussed *supra* in Part IV.B, the Michigan Court of Appeals plainly determined that the admission of Petitioner's daughter's testimony satisfied the three-part *Huddleston* test as adopted by the Michigan courts in *VanderVliet*.[3]  Even if trial counsel's argument did not, in fact, already take into account *Huddleston* or *VanderVliet*, appellate counsel's argument certainly did. Yet, the inclusion did not persuade the Michigan Court of Appeals on this state law issue. Thus, axiomatically, the argument lacked merit.

"[O]mitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013); *see also Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim."). Moreover, counsel's decisions regarding whether and how to cross-examine a witness are matters of trial strategy, which are entitled to "great respect" by this Court. *See Glenn*, 1986 WL 18475, at *4; *see also Henderson*, 118 F.3d at 1287 ("Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel."). Here, Petitioner simply fails to set forth what he believes counsel should have elicited by cross-examining Petitioner's daughter, and nothing in the record before the Court leads to a conclusion that counsel's decision

---

[3] It is noteworthy that *Huddleston* is not a case applying federal constitutional principles; it is a case applying the Federal Rules of Evidence. The Michigan Supreme Court in *VanderVliet* was not "following" *Huddleston* as binding precedent, it was simply adopting *Huddleston*'s application of the Federal Rules of Evidence as an appropriate guide in applying the parallel Michigan Rules of Evidence. Thus, even though *VanderVliet* looked to federal authority to guide the application of the Michigan evidence rules, applying *VanderVliet* is purely a matter of state law.

to not cross-examine her prejudiced Petitioner's defense in anyway. Petitioner, therefore, is not entitled to relief with respect to this claim of ineffective assistance.

In sum, Petitioner has failed to demonstrate that trial counsel rendered ineffective assistance that rose to the level of a Sixth Amendment violation. Thus, Petitioner has failed to demonstrate that the trial court's summary rejection of his claim was contrary to, or an unreasonable application of *Strickland*. Petitioner, therefore, is not entitled to relief on habeas ground III.

### 3.      Ground IV—Ineffective Assistance of Appellate Counsel

As his fourth ground for relief, Petitioner contends that appellate counsel rendered ineffective assistance. (ECF No. 1, PageID.3.) Specifically, Petitioner faults appellate counsel for failing to "includ[e] an issue regarding the effectiveness of trial counsel." (ECF No. 8, PageID.1130.) Petitioner avers that "the claims presented in his post-conviction pleadings were worthy of bringing to the attention of the appellate courts and appellate counsel's failure to do so constituted ineffective appellate assistance." (*Id.*)

As discussed *supra*, Petitioner's claims of ineffective assistance of trial counsel lack merit; accordingly "his appellate counsel's failure to raise [those claims] on direct appeal cannot be deemed constitutionally deficient performance." *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003); *see also Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("If trial counsel performed adequately, our inquiry is at an end; by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."). Petitioner has not demonstrated that the trial court's rejection of his ineffective assistance of appellate counsel claim is contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief on habeas ground IV.

## V.       Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**<u>Conclusion</u>**

The Court will enter a judgment denying the petition, as well as an order denying

Petitioner's request for an evidentiary hearing and denying a certificate of appealability.


Dated: February 23, 2023                        /s/ Hala Y. Jarbou
                                                HALA Y. JARBOU
                                                CHIEF UNITED STATES DISTRICT JUDGE